Case number 13-5308 Ryan Barton Lash Appellant v. Jennifer Lemke Officer in her official capacity and Todd Reed Sergeant in his official capacity Mr. Light for the Appellant, Ms. Broswell for the Appellant Officer in her official capacity and Todd Reed Sergeant in his official capacity Good morning may please the court Jeffrey light on behalf of appellant Ryan laughs with me at council table is my co-counsel at elder In fourth amendment excessive force case this court needs to balance the nature of the government's interest against the intrusiveness of the force use In this case the force used was an extremely painful neuromuscular incapacitating advice advice which caused Mr. Lash to fall on the ground have seizures and need to go to the emergency room This dramatic level of force was not called for in the circumstances when looking at the entire course of the police officers conduct and evaluating the totality of the circumstances In this case the police officers gave no warning to Mr. Lash that he was going to be subjected to a taser they didn't tell him to put his hands behind his back They didn't tell him he was under arrest they didn't call for backup if there were more officers The video shows unquestionably however that he resisted he resisted The video shows him pulling away that's called resisting and the adjective or characterization that should be Do you disagree that he resisted? I would I mean that he pulled away I think it's the best way to describe it the significance I'm asking you did he resist or not yes or no It was a minor passive resistance He resisted The significance of the resisting in the legal context is whether it poses a threat to the officer or represents an attempt to escape What did he do to resist what were the physical movements he participated in to resist He pulled his arm away when he was grabbed from behind and took looks like a couple of steps He raised his arms a couple times to try and push them away or to move away right Well it's not clear why he did that he testified in his affidavit that he raised his arms because he was startled because he was grabbed from behind Each time he raised his arms it was reflexive He testified that it was it was reflexive he was he didn't know who was grabbing him from behind But he raised his arms several times right and are you saying that each time was reflexive he didn't know who The video doesn't show that the video shows that he saw perhaps on the first effort perhaps he didn't know who that was That strains credulity given the whole video that they're following him around and he's saying why are you coming why are you coming It strains credulity that that that perhaps he was surprised who was accosting him But but but there's the video shows clearly that he resisted on several occasions not just once And is it is it your argument that each one of those was reflexive was not an act of will by him to resist the police officers Well they weren't discreet acts of pulling away this occurred within what about one to two seconds that he was making movements with his body in response to what was going on But it wasn't a single movement right and he he raised his arms several times It was a single course of movement and it was all reflexive reflexive there was no act of will involved This wasn't a situation where there was him being having time to deliberate and decide so it was all reflective there's no act of will on his part He was reflexive he was startled and that is a question for the jury to resolve what Whether that was a result of him being startled the video shows what it shows but the significance of that the weight to be given to that is a question for the jury But what's what's what's if I disagree with you I think that if I think that he resisted is that it was is there clearly established law that using a taser in that situation is unlawful Let's don't go to the Fourth Amendment issue let's go to the clearly established issue Sure I think it frames the question too narrowly to just look at the taser because you can't have whenever there's a new well that's how I framed it I framed it that way Is there clearly established law that once he resisted that it's unlawful to use a taser any cases there are no taser cases in the circuit That's the end of the case then is it unqualified immunity because the Supreme Court has really emphasized over and over repeatedly summarily reversed a number of court of appeals over the last decade for defining the right at too broad a level of generality not at the specific level of what happened in the case And there's no case that says using a taser for someone resisting arrest is improper that's the end of the case isn't it No your honor the Supreme Court has never said that the level of inquiry needs to be so specific as to concern the very specific technology at issue the question here is intermediate use of force And this is even a very significant intrusive intermediate use of force there have been several circuits that have found denied qualified immunity when there have not been any taser cases in their jurisdictions When resisting arrest when it seems to be resisting arrest the Supreme Court on that point has cautioned us repeatedly that we should be cautious about second guessing a police officer's assessment made on the scene of the danger presented by a particular situation Again police officers are often forced to make split second judgments you talked about one or two seconds that's true for the officer as well here and then said we've repeatedly told courts not to find clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced And I take your point that you think this is excessive for some of the circumstances but the officer faced with the governing law out there wants there's some suggestion of resistance which the video clearly shows how do you respond to all that It just seems like you have an uphill climb to put my cards on the table you have an uphill climb on the qualified immunity given what the Supreme Court has repeatedly and unanimously told the lower courts to do on these kinds of cases I think that not all force not all resistance is equal there's a big difference between a defensive or reactionary pulling away versus a active fighting threat to the officer and the use of a taser being an extremely intrusive use of force You can't have a per se rule that any time there is a slight degree of resistance or that you you can put this in a resistance box that any nonlethal force is therefore justified the Supreme Court has very clearly said you can't have per se rules like that this one factor is not determinative And the court needs to look not just at the taser firing by the police but the entire course of the police conduct which includes not giving him a warning which there was apparently no reason to do not giving not telling him he was under arrest grabbing him from behind being completely silent And while I appreciate that in a lot of cases there are split second decisions that need to be made this was not one of them they were following him around walking he was pacing around there was time if they had needed more officers to call for backup he this wasn't headlong flight Well the split second judgment was what to do when he resisted Yes That's the split second judgment And if you look at that as the snapshot of the case that gives you an incorrect understanding the court needs to look at the totality of the circumstances in Scott versus District of Columbia this court very clearly said that the test is to look at whether all of the officers actions were reasonably calculated to place the person under arrest without allowing them to escape Here looking at all of those actions the numerous failures to take appropriate actions to use lesser force if possible to even do something as simple as saying Mr. Lash put your hands up put your hands behind the back that was not reasonably calculated that failure was not reasonably calculated to lead to And that may well go to a strong fourth amendment argument but what does it do for the qualified immunity argument the whole purpose of qualified immunity is to allow room for mistakes right but mistakes that are not of a nature that would lead to liability But only reasonable mistakes it's not a reasonable mistake to decide to To use a taser when someone resist you in a protest setting that's per se unreasonable I'm not saying that's per se unreasonable I'm saying if you look at the totality of the circumstances it is unreasonable to decide that you're not going to tell to not first give a person a warning to not first give a person an instruction that they're under arrest and they should put their hands behind their back to have somebody who's the only order he was ever given was to stop taking down notices and he complied with that somebody who has although he had been earlier somewhat boisterous At this point the situation had de-escalated and at that point the officer's course of conduct was unreasonable in the totality Can I ask you if your response to Judge Griffith about the taser as the test for qualified immunity is that that's too particular too narrow how would you phrase what the test for qualified immunity in an excessive force case should be What would be the phraseology that we would apply as at the right level of generality Sure in our opening brief we we put in the statement of issues that the second one I think a concise statement which is grabbing an individual from behind without warning or notice that he was under arrest where notice was practical practicable and using a painful incapacitating and dangerous device to shock an individual That is even more particular than I thought I thought your maybe I misunderstood I thought your argument what that you made in response to Judge Griffith was that that was at too specific too narrow a level that he was asking but this seems also like a rather particularized description of what a qualified immunity test should be The point I was trying to make in response to the earlier question was that focusing on the specific technology at issue was too specific it's fair to characterize this as a as a as an intermediate but very significant use of force and to characterize the encounter as involving somebody who is suspected of at a minimum at a maximum having committed a petty misdemeanor Of disorderly conduct Let me ask you this is the way we put it in another case and that is in war law it says whether a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions You think that accurately describes what the our test for qualified immunity should be or do you disagree with that as the test That case does accurately describe the test for qualified immunity Arrest when somebody is perhaps being not as cooperative as they would like the the severity of this use of force which the district court completely ignored in its analysis that side of the balance That significant use of force needs to be balanced against what was here a minor defensive pulling away which even if it's characterized as resistance does not rise to the to a threat to the officers safety or to anybody else's safety in this case we have somebody who's unarmed I take your point about just using it for facilitating an arrest would be a problem but once there's some resistance or reasonable perception by the officer of resistance isn't it then to use your other box that you set up reasonable for the officer to assume that there's a danger when someone's resisting arrest Not when there is as you put it some resistance when there is resistance that rises to the level that this dangerous weapon should be used this weapon that inflicts 12,000 volts of shock and often is lethal to individuals that requires not just somebody pulling away or that perhaps a little bit more time would be necessary to get the person under control that requires a immediate imminent threat and that's the standard that numerous jurisdictions have reached as we document in the In the 6th circuit for example not even on a qualified immunity just on the straight law of the issue said that it was okay to use a taser reasonable to use a taser if the suspect actively resists arrest and refuses to be handcuffed and that's not even qualified immunity that's just the underlying constitutional issue Well when these types of cases are decided they are highly fact specific and the 6th circuit case did not involve which case specifically are you referring to? Hagan's 6th circuit 2012 case Hagan v. Franklin County Sheriff's Office anyway it's a case it occurred after the events in this case this 6th circuit case so I'm not going to say that the officer would have necessarily been aware of the case obviously but just reflects I think the state of the law you talk about the dangerous device but the state of the law seems to be in other circuits that it's despite the danger of the device or the intrusiveness of the device that it's still okay to use when a suspect actively resists arrest Well I don't think that the circuit courts that I've considered have all uniformly had before them a well developed record on the intrusiveness of the device Hagan's was a very as Judge Kavanaugh pointed out active resistance and in fact there was a wrestling match in that case before they used the taser so I take it your view is that that's different than well you've described it as passive resistance not exactly passive resistance Minor resistance Minor it's not passive right passive would be just lying down or something I mean passive has a classic meaning people sit down and require the police to carry them out that's that's not what this is No there was an actual That was the type of resistance you used to do Right so this is not going well right this is a little bit more than that but it's in the same category in the sense that it is an action that might make the police's job a little bit more difficult but does not threaten anybody's safety Further questions Oh it means I'm over Two minutes over Two minutes over Okay thank you You can see how carefully if you watch before you can see how carefully we monitor this Not very Thank you Yeah May it please the court The Supreme Court in the Graham versus Connor case said that when analyzing a claim of excessive force It's important to balance the nature and quality of the intrusion on the Fourth Amendment interest versus the government interest of the state And to determine whether or not the official actions were objectively reasonable in light of all the circumstances And then the Supreme Court said that careful attention needed to be focused on the severity of the crime the threat posed to the officers and others and whether or not the individual was actively resisting arrest As Judge Griffith pointed out with respect to the video evidence in this case There's no question that in this case Mr. Lash was actively resisting arrest But there's a question about the hostile environment isn't there I mean the video doesn't show a hostile environment Your Honor Sergeant Reed's declaration states that there was a hostile environment of course the video doesn't show everything And that was not disputed by Mr. Lash as the district court noted whether or not there was a hostile environment whether or not it was a volatile situation Is that right Mr. Lash didn't dispute that there was a hostile environment Did not dispute if you look at the plaintiff's statement of material facts they do not dispute our statement of material fact based on the Reed declaration That says that the situation was volatile tense that the officers had been harassed prior to their encounter with Mr. Lash On this one you want us to ignore what we see in the video No that's not true because the video of course only starts at a certain point it does not capture everything that was happening in the park from the time the officers entered the park Right but it's a pretty one of the videos is pretty long and I think it's fair to say looking at that length that is from the beginning of that video to the time he's actually arrested It's hard to characterize that video as a hostile environment I think you're referring to Mr. Lash's video because that's the one that starts when he erupts from the tent where the officers are there That video is only five minutes of the entire time that the officers were I'm sorry but of the entire time that the officers were in the park So to say that that video captures the atmosphere in the park Maybe not but this is summary judgment so if we have five minutes of non-hostility isn't that enough to raise a genuine issue of material fact as to hostility No not when Sergeant Reed's declaration is unrefuted where he says that the atmosphere when the officers were in the park was volatile and that they had been harassed So they could have been harassed before they saw Mr. Lash at his tent There's no dispute that doesn't the video evidence doesn't dispute whatever happened prior to Mr. Lash erupting from his tent And there's no indication that the officers were in the park for only five minutes So I think that's why the district court appropriately said that there's no dispute that it was a tense atmosphere where the dispute began is what happened during the interactions between the officers and Mr. Lash And when you look at the video you look at if you look at Mr. Lash's video you see that the officers walked away from him as the district court noted three times So he came after them, he was gesturing, he was being belligerent, loud, etc. They walk away. He comes after them again, they walk away. They walk away a third time And then he starts, it's undisputed, he tears up notices that were being put on tents to try and warn individuals in the park that they could not camp in the park and that the park police were coming to enforce the National Park Service's no camping regulation He starts tearing up the notices. There's a dispute whether or not, there's no dispute that he was told not to tear up the notices Then there's a dispute as to whether or not he continued to tear them up. But that's really not significant. He doesn't challenge the probable cause to arrest If you look at Defendant's Exhibit B, which focuses closer on the interaction, you see that as the officers approach him, he says officers are coming Then he starts saying I've done nothing wrong. So he clearly knows that the officers think he's done something wrong. He says I've done nothing wrong. And then as Officer Tiffany Reed is within only about two feet of him At one point in Exhibit B, they're actually facing each other. Within a second, he turns his back to her and she grabs him. It is absolutely incredulous to say that he didn't know that it was an officer who grabbed him from behind Was there a warning about the use of the taser? That's disputed, right? That's disputed, Your Honor. It's disputed and therefore the District Court in its decision assumed correctly as it should have that no warnings were given Looking at the video, it seems that the officers easily could have subdued him without the taser Well, Your Honor, they were trying. There were two officers who were trying. If you notice, he pulls his arms away on more than one occasion. He pulls it away from Officer Reed at least twice Then Officer Hilscher, a male, comes, tries to grab his other arm, gets his other arm, but he's still resisting. He's still moving This is not dispositive to the issue of the case, but this strikes me that this could have been accomplished without the taser But, Your Honor, if you notice in watching the video, after grabbing his arms, because he wouldn't stand still, they tried to take him down on the ground Officer Hilscher uses his foot to try and knock out Mr. Lash's foot to try and bring him down on the ground They could have hurt him significantly by tackling him. I get that But I think my point when you say it could have been done without a taser is that there was an increasing effort by the officers to bring him under control She's surprised that a taser was used. She's very surprised that a taser was used. It was a quick taser Well, I'm not sure that that's a fair understanding of Officer Reed's reaction. I think when the taser was being used, she moved away I mean, obviously, one would hope that the officer was aiming the taser correctly, although, of course, we've seen cases where officers have tased another officer in the middle of a melee like the Tenth Circuit decision in Casey where one officer tased another So, Officer Reed, you can see on the video that Officer Reed looks at Officer Lemke Officer Lemke has her taser out, and it's obviously clear that she's going to use the taser, and Officer Reed just moves away So, on the Fourth Amendment issue, putting to one side the clearly established issue, the district court here seemed to resolve a number of contested issues on the basis of the video I mean, these are contested issues, but he decided that the video was so clear that a reasonable jury couldn't believe Mr. Lash's view Which is entirely appropriate under Scott v. Harris, the Supreme Court's decision Yeah, but that sure is messier than just going on clearly established, isn't it? Well, what the Supreme Court held in Scott v. Harris is that contradictory witness statements cannot raise a triable issue of fact in the face of video evidence For example, Mr. Lash says in his declaration that as soon as he saw it was police officers, he put his hands behind his back That's blatantly contradicted by the video I mean, he's got Officer Hilscher right next to him, Officer Reed He can see there are officers there, and he's still resisting He doesn't put his hands behind his back until he's taped So, that's a case where the video evidence clearly shows So, on the Graham factors, you say that hostile environment was conceded by Mr. Lash, is that right? That's correct, the district court said that in the statement of material facts The next Graham factor, immediate threat to the safety of police and others You say there's no dispute as to that? You say the video resolves that dispute decidedly, that there was an immediate threat to the safety of police and others? The video resolves that in the sense that Mr. Lash was very close to officers who had guns So, I think that's not a disputed fact that when individuals are in close proximity like that There was always the potential that a gun could be grabbed from an officer And that's what the district court focused on when the district court said that there was a threat to the officers And also, that there was a crowd there that was very unpredictable And this court in the Opelwetter case, where there was an arrest and there was a group of 17 individuals there And the officer used some force in effecting the arrest This court specifically noted that that was relevant to the consideration That there was a group of people there, that their reactions were unpredictable And therefore, the arrest needed to be done very quickly And that's what happened here, because not only was there a group that, as you can see in the video Was fairly close to the officers, but there's an entire park full of people They didn't use a taser in Opelwetter, right? No, they didn't, but my point is that you can take into consideration The surrounding circumstances, that there's a group of people there that enhances the threat to the officers Which suggests dispatch is necessary, but the question is whether a taser is excessive force Well, that's correct And in this particular case, again, if you look at the way the officers escalated their attempts To try and effect this arrest quickly Grabbing arms, grabbing arms, that's not working They finally get the arms, and then they try to take out his leg Because he's still resisting, and that's not working Then they have to escalate the use of force And so, and of course you see, it's effective They use the taser, he immediately puts his hands behind his back They are able to handcuff him and remove him from the scene What did the district court decide here? Fourth amendment violation, no fourth amendment violation, or qualified immunity? The district court concluded that there was no fourth amendment violation And therefore, because there was no constitutional violation So it didn't go on to the qualified immunity test? Well, it decided that, the qualified immunity test If you find that there is no violation of a constitutional right The officer is entitled to qualified immunity What it did not go on to was the clearly established Could you look with me at page JA31, which is the district court's opinion? Page 11, yeah, sorry Page 11 of the opinion JA31? Yeah You see the first full paragraph that says, in Arrington? Yes I do Okay, it's a sentence before that It says, a defendant's motion for summary judgment is to be denied Only when viewing the facts in the record and all reasonable inferences derived therefrom In the light most favorable to the plaintiff Now this is the key point, sorry I started with a big introductory clause A reasonable jury could conclude that the excessiveness of the force is so apparent That no reasonable officer could have believed in the lawfulness of his actions Citing ward law Now that is actually a description of the qualified immunity test, right? It's not a description of the fourth amendment test Isn't that right? Well, ward law was a qualified immunity case, so it is describing that But in determining But it's quoting that as if that were the fourth amendment test Which I think might have been blurring the two Do you think this is the fourth amendment test? Do you think that, assuming there was no qualified immunity Or we didn't get to that question at all Do you think that the test for the fourth amendment is That the excessiveness of the force is so apparent No reasonable officer could have believed it lawful? No, that's a qualified immunity test The fourth amendment test is simply whether or not There's unreasonable search or seizure So that's the fourth amendment test But here, the district court clearly decided That no reasonable jury could find That there was an excessive force in this situation So that's the qualified immunity test But it's the first step That there was therefore no violation And then the district court did not have to reach the second step Which is that there's no clearly established law And had the district court gone there The district court clearly would have concluded correctly That there is no clearly established law in this area The Supreme Court has not addressed the issue of taser In the context of excessive force This court has not addressed the use of a taser In the context of excessive force And there is no consensus among the circuits Regarding the use of a taser With respect to an excessive force claim Which, those are the three tests this court in Bain said That you look at to see whether or not the law is clearly established So even had the district court reached that second part Of the qualified immunity analysis Well I'm just wondering whether the court did reach that Because in setting the rule for summary judgment It applied the incorrect language for the fourth amendment It applied the qualified immunity language Not the fourth amendment So even though the court said it was concluding There was no fourth amendment violation Was it in fact concluding that there was qualified immunity That's the nature of the question Well I think that's probably maybe slightly unclear In the opinion your honor But I think when you read the district court's opinion In its totality The district court does not believe that there's a fourth amendment violation Does not believe that the use of the taser Under these circumstances A volatile situation The need to make an arrest quickly You have an individual who is actively resisting arrest And that there is an escalation of attempts to try and arrest him The district court concluded That there was no excessive force here And as long as we've got the opinion out Could you Is there a place where I'd ask you about the hostile environment And you said that the Plaintiff had conceded there was a hostile environment I take it is that what you're referring to at the bottom of page 13 And the top of page 14 That is JA33 to JA34 I'm sorry of 1314 Yeah You said that the district court relied on the fact that Lash Had not disputed That it was a hostile environment And the only reference I find Yeah no your honor Actually I was relying on page 2 So if you look at page At the bottom of page 1 And you go to page 2 The bottom of page 1 The district court says in response quotes And he's quoting from the Reid Declaration In response quotes Some of the individuals in McPherson Square Became agitated, verbally harassed the officers And interfered with the officers Distribution efforts He quotes the Reid Declaration Lash swore at the officers etc Then he says at this point The parties account of the facts So the two things Was there a hostile environment At the time of the arrest That sounds to me like There was a hostile environment At one point in time But now we're talking about the moment of arrest Was there a hostile I think a reasonable officer Would have believed That they were in a hostile environment They had demonstrators that had been following them As they were Trying to affect their arrest of Mr. Lash They were very close To Mr. Lash On Mr. Lash's video You can actually hear somebody yelling That I initially thought was Mr. Lash Who kept saying, you know You can keep coming, it's not going to matter These notices aren't going to matter I thought that was Mr. Lash But he keeps yelling when Mr. Lash is being taped So it's clearly somebody else who's yelling Not Mr. Lash So yes, I do believe that in fact There was a hostile environment That the officers found themselves in When they found the need to Make this arrest as quickly as they did And therefore, in light of The totality of the circumstances here We urge this court To affirm the district court's conclusion That there was no excessive force But even if the court Decides otherwise, the law was not Clearly established at the time Officer Lemke used retasure And Sergeant Reed was present on the scene Therefore we urge the court to affirm The district court's decision Further questions from the bench? Thank you I already know there's no time left But as I already promised, we'll give you some more time So two minutes, okay? I do have one question as we start What's the answer If there is an answer to this question Of whether the plaintiff Did not dispute that there was a hostile environment What was not disputed Is that at some point in time There had been protesters Including Lash That had Been agitated I think was the word Or verbally Made their displeasure known To the police But the That had happened at some point in time Earlier And as the video makes clear From the point in time where the video starts On There is not that type of Lash doesn't know everything that Sergeant Reed may have experienced At some earlier time And that's what discovery is for In a case like this To flesh out what the officers Had been experiencing earlier Perhaps I wanted to make two very brief Points, one of them is I think that the Court should be very hesitant to When it's considering the nature of the Environment and The perceived Hostility should be very careful when It's in the context of a First amendment activity When it's not a Mob but a protest And when the statement By Mr. Lash Though crude and described as belligerent By the district court Were criticizing the officers And their performance of their duty And the second point I wanted to make Is I just wanted to urge the court It's our position that the court should reach The underlying fourth amendment Challenge or the underlying Fourth amendment issue Whether or not it decides the qualified Immunity in our favor In particular there is a still pending A federal tort claim act Case in the district court raising the same issue And we believe it would provide helpful guidance For us in that case Thank you
judges: Garland, Griffith, Kavanaugh